2-15-0027. The people of the state of Louisiana are here on behalf of Ms. Eliza R. Kaliski and on behalf of Ms. Diane Campbell. Ms. Kaliski? Oh yes. There are two motions to cite additional authority. Thank you. If the court is ready. May it please the court, again my name is Eliza Kaliski, I'm a state appellate defender on behalf of Mr. Hernandez. Today I'm intending to focus on the first issue in the brief unless this court has questions about the second issue, which I would be happy to answer. Otherwise, I will confine my remarks to the first issue in this case. The Sixth Amendment requires an attorney to provide assistance that appreciates and understands the applicable legal principles and provides an adversarial check on the prosecution. It requires the use of the rules of evidence to avoid admitting incriminating statements and prejudicial facts. And here, the defense counsel successfully moved in limine before trial to bar AG's hearsay statement, namely her cell phone notes concerning the December 2010 incident. The judge granted the motion and the state said it did not intend to use that evidence in its case in chief. But at trial, during its direct examination of the complainant, the state proceeded to elicit the content of those notes. Why wouldn't they do that after the opening statement that was made by counsel? Well, the opening statement did not open the door to this evidence in any way because counsel's opening statement did not get into the content of the notes at all. The only thing that defense counsel said about the notes, and it is on page 210 in the report of proceedings, is she tells the child advocacy person that she put it in her diary. We later find out she has no diary. She put it in the notes in her cell phone. That is the sole reference in the opening statement to these notes, and it doesn't get into their contents at all. Wouldn't the content, though, tend to show that it's something that I'm likely to put in my diary as opposed to in my, I don't know, a text message? I think everyone's, maybe I'm wrong, but it was operating under the assumption that this was a text message early on in the motion to eliminate. That's correct. I think the parties initially were somewhat confused about whether they were text messages or notes. But if you look at the exhibit, you can see that there's no cell phone number at the top that would show that it's a text. And later at trial, the complainant testified that she wrote these notes to herself. She never meant them as a text in any way. This is more just a note to herself. Wouldn't the content tend to prove that? That it's a note to herself. Well, it's something that you would put in your diary if you were to keep a diary. But the fact that it's a diary versus cell phone notes doesn't get into the contents of her statement against Mr. Hernandez in any way. I don't think that opens the door. And to the extent that this Court believes it did open the door, counsel, once counsel's got that motion to eliminate ruling, counsel has every duty not to then open the door to the evidence that he had successfully kept out. But when he heard that opening statement, he had to figure out a way, or she had to figure out a way, to attack the credibility of the witness, of the victim. And so why would this not be allowed? This is other crimes evidence. It was admitted as part of other crimes evidence. There was no limiting instruction given with respect to that. Right. So was she not in the position of needing to attack the credibility? Well, the State's the one that brought it out. Right. So it was defense counsel's opening statement. Right. So once they knew that it was coming in, they needed to be able to have some flexibility. Did they not? Well, Section 115-7.3 of the Code of Criminal Procedure, which is the basis for this other crimes evidence, the basis that the State used in its motion to bring it in, specifically requires that the evidence otherwise be admissible. It's right there in the statutory language. So that means that evidence that's a hearsay remains hearsay. You can't bring it in under the guise of other crimes evidence. And I think that's a real slippery slope to be able to bring in all sorts of evidence. Well, but if trial strategy meant that you would leave, not object to hearsay, and you had the opportunity to cross-examine, I mean, what is the difficulty? Well, we're contending that any trial strategy where counsel doesn't object is not a reasonable trial strategy because counsel had already kept this evidence out. But even if counsel said, hey, I don't need to object, cross-examination doesn't cure this problem because on cross he doesn't get into the contents of the notes at all. The only thing he asks about on cross is whether she's able to alter the time on the notes, whether there's any way that she can go into the cell phone and make it look like they were entered into a different time. They don't get into the content of the notes at all. And so if counsel thought that would work, that was also an unreasonable strategy. There's no rational basis once you've decided I'm going to file this motion to keep it out to then let it in without objection. And furthermore, if counsel thought that when the judge granted the other crimes motion that, oh, this means that the State can bring in the cell phone notes, counsel had an obligation at that point to go out and say, Your Honor, does that affect the cell phone notes ruling that you already issued? Especially because the State's motion didn't mention the cell phone notes in the State's other crimes motion. The arguments on the other crimes motion never referred to, oh, and this is going to include the cell phone notes. So counsel would have no real reason to think that, oh, okay, the cell phone notes are back in. And so he certainly should have stood up at that point and said, Your Honor, I just want to clarify, the cell phone notes are still out. I mean, it's two different things. I mean, you're correct that the other crime, the admission of other crimes evidence doesn't open the door to inadmissible evidence. I mean, we all agree with that. Correct. But, again, on a separate front, the issue is the invitation by defense counsel during opening that if you're the State, and the State didn't mention it during their opening statement. That's correct. The defense got up and said, we're basically, and I'm going to paraphrase, basically we're going to impeach this victim by showing that she told the forensic interviewer that she put these notes in her diary. She didn't put these notes in her diary. She put them in a phone. Now, you can argue, you know, that that was pretty insignificant impeachment. But it's impeachment nonetheless. And aren't those decisions tactical decisions? Whether or not to impeach is a tactical decision, but it's not a reasonable tactical decision. Trial strategy still has to be reasonable. And so if counsel thinks that. I thought that the case law says that tactical decisions are virtually unassailable. Counsel's trial strategy still must be reasonable. Counsel can't, you know, for instance, in the case where counsel gets up and concedes guilt to, you know, try to get mercy. This isn't conceding guilt, but, I mean, would you agree that this is somewhat impeaching? I mean, when you think about writing something in a diary, if I tell you I wrote something in my diary, does it come to mind that I'm sitting there on my cell phone making notes in my cell phone? For today's teenagers, I don't know that I would necessarily picture a journal. But I think the greater point is if we're talking, counsel at this point is just talking about small inconsistencies. He's just talking about her credibility generally. He is not saying that the contents of the 2010 note show that she is now lying, that this is a recent fabrication, that she made it all up. None of that. And the fact remains that even if it's impeaching, we're still talking about a prior consistent statement here. And counsel needed to object on that ground as well because of the prejudicial nature of prior consistent statements, which will bolster her credibility in a case where she's really the only, she's the sole other witness in the room besides Mr. Hernandez. And so to let prior consistent statement go without objection, without anything, allows that to become, just like any other, extremely prejudicial evidence. And because she's the only witness, as you said, the linchpin of the case, any little impeachment that you might have on her, you might try to throw against the wall, see if it will stick. I think the distinction between a diary and notes are pretty, that's a pretty fine point to try to hang your case on. Particularly when you're up against, you know, if I let this come in, then her testimony about the 2010 incident has been bolstered. The 2010 incident is other crimes propensity evidence for the 2011 incident. The 2010, these cell phone notes make the 2010 case and are a significant part of the 2011 case. And to, even if counsel thinks, well, this will show that one time she said notes and another time she said diary, that's not a rational, reasonable tradeoff on counsel's part. And we have to look at the overall representation also. I mean, the fact of the matter is there were motions filed, there was cross-examination, there were other things that were done by defense counsel here that would have indicated defense counsel vigorously, gave a vigorous and reasonable representation of her client. Well, that counsel did these other things does not automatically mean there is no prejudice, because an isolated error can still be an effective assistance. And so it's great that counsel cross-examined the witnesses and called the complainant's younger brother and argued against jail time and all of that. But it doesn't matter when counsel's going to let the State present a prior consistent statement that bolsters the credibility of the sole witness against him. And, you know, one of the things the State points out in its brief is, well, counsel, defense counsel filed the motion in limine. Well, that's great, but if you're not going to make sure that the State doesn't violate it, if you're not going to jump up and make sure that the judge's ruling stands, that doesn't accomplish very much at the end of the day. And the case hinged on her credibility. And this evidence went directly to that credibility. Well, again, as we know, trials are very fluid. Things change. Things that you prepare for don't necessarily happen, and things you don't anticipate do happen. So. Absolutely. But I think here, if counsel really had changed his strategy in some way, if counsel, if something had happened between the ruling on the motion in limine and the day of trial, you would expect counsel's closing argument to be different, to reflect that counsel is using those notes in some way to attack the State's case, beyond just this minor impeachment about diary versus cell phone notes. You'd expect counsel to be arguing that note contains a reference to another person being there, and so her entire narrative is unreliable. Counsel doesn't do that. Counsel doesn't really touch on that incident in much detail at all in its closing argument. And so I think there's nothing in the record to suggest that counsel's strategy changed from the motion in limine. The way I'm interpreting your argument is counsel is arguing not the contents, but the distinct, distinctive difference between text messages versus notes in a diary. Which would be similar to a person who supposedly heard incriminating admissions that were for some reason incompetent, but in the process of reporting it to police said, I heard this at the circus, when in fact she heard it at a hospital. And so counsel says, I'm going to establish that this alleged confession or whatever you want to call it didn't take place in a circus, but took place in a hospital. Counsel is really quibbling at that point over whether it's a diary or cell phone notes. But the point is, if there is a motion in limine, why even bring any of this up? Well, to the extent that counsel opened the door, it doesn't make any sense, because you know that the judge has already ruled that that evidence can't come in. So to the extent that counsel opened the door, there's no reasonable trial strategy that would justify that, because you get so little out of it. Would you concede that counsel opened the door insofar as the existence of notes? If this Court finds that the reference to her notes constitutes opening the door, then yes. To the existence of notes, but not necessarily to what's in the notes. Correct. Counsel did not touch on the contents at all in that opening statement. Was there any discussion relative to how the notes or the contents of the notes could have some relevance to the case such that the jury would have been admonished or could have been admonished as to either total substantive or for purposes of limited determination of credibility or impeachment? No. There was no discussion on that grounds. At the hearing on the motion in limine, the defense counsel made their argument. The State said, you're right, it's not an extended utterance. We can't think of another basis to admit it. We don't intend to admit it in the case in chief in any event. The judge said, I think it would not be admissible. So there was no discussion about like, well, if it does come in, here's what we would tell the jury. They didn't get to that question at all. In counsel's motion in limine, the written motion doesn't address that either. And this is reversible error. I mean, let's assume for a minute that counsel, defense counsel, opened the door. Sure. But not to the content. Right. So the State goes into it, but goes into the content, which is a little bit more, you know, in that in itself, in a bench trial, the admission of the prior consistent statements on that one event is reversible error. Yes. And here's why. First, because counsel doesn't object, the prior consistent statements, as you say, are allowed to be considered just as any other evidence. But it's not just any other evidence here. It's other crimes evidence that's admissible for its propensity. And allow me to finish my thought. Sure. But it's also, we're talking about the other case, too, that it's used as direct evidence. Right. I understand that. Right. So it's used to help the victim of that exact crime. Right. It's used in both cases, and the case rises or falls on her credibility. And the judge can use any doubts he has about her credibility overall, especially given that, you know, if she doesn't disclose the 2010 case for nearly a year, given that delayed disclosure, you know, the judge could resolve any concerns he had with this prior consistent statement. That bolsters her credibility. And then he's resolved any doubts he has about her credibility at all in the 2011 case because it comes in for, the 2010 case comes in for propensity in the 2011 case. So I think it does in this case, given how important credibility is, given that Mr. Hernandez does not confess, given that the younger brother is in the room for the 2010 incident and does not corroborate the sister's testimony whatsoever. All of those factors in this case hinges on credibility, and the prior consistent statement plays a large role in that. Counsel should have rejected. I've gone over my time. So I would ask this court to reverse the remand for your trial. Thank you very much. Thank you. Ms. Campbell. Your Honors Counsel, I also intend to address only the first issue. And preliminary statement, this is a bench trial, not a jury trial. Justice Zinoff mentioned something about a limiting instruction. In Justice McClaren's scenario, he mentioned something about a jury. So I just want to make sure that it's a bench trial. Thank you for reminding us. And the issue was forfeited because it was not objected to at trial or by separate post-trial counsel in the post-trial motion. The only way this can come in is plain air. And here the evidence is not close. And to support that, I would like to quote from the trial judge's decision. It's in the record at pages 328 to 329. The judge has taken a short recess, and then I've taken the opportunity to review my notes from the trial extensively. I looked at the different witnesses' testimony. Fortunately, it's not a particularly lengthy trial, so I'm not going to attempt here to recite the factual basis for my finding. As to count one, I find the state has met its burden of proof. I think the testimony, when considered as a whole, makes the required standard of proof beyond a reasonable doubt. I would note that there were some slight inconsistencies, but I've considered the demeanor of the witnesses and I've considered the passage of time between the events in question and the date of the trial. I will enter a finding of guilty as to count one. Why do you think this case is not close? Because the victim's testimony, as the trial judge's comment indicates, was very compelling. As the judge notes, there's some slight inconsistencies, but she is very compelling in her testimony, and she directly testifies to both the incident that is on trial and then the other crime's evidence, which is the subject of the textual self-investigation. There wasn't any forensic evidence indicating. Correct. We're talking about one witness's testimony against how many other witnesses' testimony? Let's see. The two younger brothers testified, but the defendant was obviously the primary witness. But one witness is sufficient if she was compelling. Could you define compelling for me, please, because I'm not sure I understand. To me, compel means to force someone. Oh, sorry. Very convincing or overwhelming, perhaps, in the context of the sufficiency of the evidence would be a better phrase. When we talk about how important this credibility is, I mean, it kind of cuts both ways, because defense counsel is arguing that this is a prior consistent statement, which would be very prejudicial as bolstering the victim's credibility. And then, on the other hand, you have argued in your brief that it's, you know, invited error based on Young and these other cases, that it's an attempt to impeach, where the defense attorney should pull out all the stops to impeach the victim's credibility because the credibility is the linchpin of the case. Okay. I have a layered response to that. The first is that I'd like to point out that there is no mention of the texting cell phone evidence in any of the closing arguments. Right. So it is not something that is emphasized or relied on. And the trial court didn't mention it. Correct. And then I have a quote from Williams, which is at page 6 in my brief, where they talk about hearsay and they say, aside from the unspoken and sometimes cumulative nature of hearsay evidence, its most objectionable feature and the main rationale underlying its exclusion is the opposing party's inability to test the real value of the testimony by exposing the source of the assertion to cross-examination. That did not occur here. The hearsay testimony is what the victim said on her or recorded in her cell phone. She is available for testimony. She testifies first concerning. Wait a minute. Calling it hearsay is one thing and calling it a prior consistent statement, which is a form of hearsay, is another thing. And there's a bunch of, a ton of case law that talks about how devastating prior consistent statements can be. We used to call it, when I was trying cases way back years and years ago, we used to call it the Cook County rule. If the witness was there, there was no such thing as hearsay because they're subject to cross-examination. That's not the rule. That's not hearsay. It's hearsay whether the person is being subject to cross or not. If they said it outside of court, it's not coming in. Okay. There are, again, a couple responses to that. Defense counsel, I'd like to quote from his, or from defense counsel's opening statement. Let me find that. First of all, defense counsel is a female. Ms. Van Dorsen. What? Correct.  Ms. Van Dorsen. I'm sorry. Let me find that. We're looking for R210, which is talking about the. . . Okay. It's on page 9 of my brief, and it is at page 210. And defense counsel's, first of all, in Holmes, the case law says when a party procures, invites, or acquiesces in the admission of evidence, even though the evidence is improper, that party cannot contest the admission on appeal. So as a front to this argument, the defense counsel, in her opening, makes what I consider both a general invitation and a specific invitation. And for the general invitation, she tells the story to everyone and tells different stories to everyone. Then there's an unintelligible remark. And then a few lines later, she wants to accuse the defendant, who has been living in the home for three years, of two separate incidents where she's telling different people different stories. And at the end of the evidence, I would ask you to return verdict of guilty. So that's the general invitation. So that is, you know, if she's telling different things to different people, obviously that is going to be defense exhibit number one, which is the child advocacy interview, which he introduces. And the other is, in fact, this cell phone thing. And then the specific invitation she makes is between those two statements, and that's, again, at R210. She mentions a December 2, 2010 incident, and she tells the child advocacy person that she put it in her diary. We find out later she has no diary. She put it in the notes in her cell phone. So I believe it was Justice Burke who mentioned that, you know, the obvious ways of showing that is, in fact, a diary entry is actually looking at the contents. When you look at the testimony at the hearing, the victim testified first regarding the incident at trial, which is not the 2010 incident. Then the ASA asks if there was anything the defendant had done before, and the victim testifies regarding the December 2010 incident directly, and that's at pages 233 to 236. Then the ASA asks the victim, did you write anything in your notes on your cell phone after he touched you on the breast? That's at R237. She says yes, she wrote it that night. The ASA says People's Exhibit 1 has been previously tendered to the defense. Defense counsel makes no objection at that point to the mention of it. That's at page 237 to 238. The ASA shows People's Exhibit 1 to the victim, and she acknowledges that it's notes on her phone. That's at 238. She tells how she enters the notes on the phone. That's 238 to 239. She said she wrote two notes and identifies those notes as People's Exhibit 1. That's at 239 to 240. And then says she wrote the notes because I always write my notes in the diary. Question, so that was your diary. Answer, yes, that's at page 240. And then when writing the notes, they were her own recording. She did not intend to give them to the police. That's at page 241.  Her diary notes, not some sort of text message that she was sending, and therefore it's directly addressing the defense's sort of specific invitation that these, you know, whether it's a contradiction that she said diary, and then it comes up on her cell phone notes. Then why did you try, or the state's attorney, try to get the content submitted into evidence? The only issue was whether or not in opening statement it was incorrect to suggest that she misspoke when she said that it was text messages when it was actually in her diary, when she's now been rehabilitated through the examination that you've just related. Why does one have to go beyond that? In other words, the door was open into the living room, but you walked into the kitchen now, at least insofar as presenting the notes as substantive evidence. I do. I mentioned that I saw a general invitation, which is she's told everybody everything, and she always tells everything differently. And I think that gets us into the kitchen, while the specific invitation to the cell note diary entries as a contradictory statement made to the Child Advocacy Center is sort of the specific. On page 9, you say contrary to the defendant's claim in his brief, this was a sound strategic decision by trial counsel. Since evidence regarding the event was ruled admissible anyway. Okay. So if the ruling was inadmissible, as well as being inconsistent with the grant of the motion in limine, why would this be otherwise a sound strategic decision? Okay. This goes back to the fact that in their opening statement, the State only mentions the December 2010 incident. It doesn't mention in any way, shape, or form the cell phone notes. It is defense counsel who introduces that in her opening statement. So the State's intent going in probably, which we can assume from the contents, is to have a direct examination of the victim regarding the incident, which is what occurs first. And that's the other crimes? Yes, that is the other crimes evidence. So defense counsel knows evidence regarding that incident is coming in. The victim then will have to be impeached. Their argument is clear. She made different statements to different people. So they're going to try and bring in those different statements, one of which are the cell phone diaries and the child advocacy tape to show inconsistencies. Unfortunately for the defense, the victim is very compelling. The problem with that argument is the only inconsistency is whether it would be denoted a text message or a diary note. As far as the contents were concerned, they weren't inconsistent. So to say that they're inconsistent as a basis for good trial strategy fails because the facts don't fit the argument. When the defense counsel is making that statement, he has not yet heard the victim's direct testimony regarding the incident. He doesn't have a crystal clear vision as he does after her very convincing testimony that she provided excellent testimony directly on it. If this is a prior consistent statement, doesn't it therefore have to follow that it is going to be consistent with whatever she testifies to on direct as to what the transactions were? Defense counsel and the state are disagreeing as to whether these statements are consistent or inconsistent, as can be noted because at the tail end of the trial, when defense counsel's exhibit number one, which is the tape of the child advocacy interview is introduced, the state says that it is a prior consistent statement, but it's not objecting to it coming in and it thinks it should come in. Defense counsel counters with that it is in fact a prior inconsistent statement. Obviously, all through the trial, the two parties are disagreeing as to whether the victim's prior statements are consistent or inconsistent. Do they disagree as to whether or not they are hearsay or not hearsay? They do not disagree on that. I think it's clear it's an out-of-state, out-of-court statement, so they're looking to get it in on some. Okay, thank you very much. Ms. Kowalski? Just a few quick points, Your Honors. The first is there was some discussion at the beginning about this is a bench, not a jury, and that's absolutely correct, but again, because this was not objected to, the judge can consider it as a bench, not a jury.  The evidence is not prior consistent statement. It's just regular evidence, only that regular evidence is propensity of the crimes evidence. That's a prior consistent statement. Would you agree? I mean, counsel went through basically the colloquy between R237 and R241. I mean, the content of the notes is really not discussed during the testimony. But it does come in. It is introduced. It's introduced without objection. Right. It is introduced without objection, and while counsel notes that it was forced because defense counsel didn't object, that's part of our argument. Right, or it's ineffective assistance, I understand that. Right, defense counsel sort of objected. So you have the defense making an opening, where the defense opens the door to this. The state comes in and basically puts it in, but doesn't talk about it during the direct, doesn't go through the notes, basically just what looks like an attempt to show that it was a diary entry or akin to a diary entry. Then the state doesn't argue it on closing argument. Defense doesn't argue it. State doesn't argue it on rebuttal. Trial court never mentions it. It's a bench trial, and you want us to reverse the conviction based upon that, because the court could have used it as substantive evidence. Well, the judge says that he's reviewed all of the evidence and all of the testimony when he convicts, and that includes this exhibit. And, you know, if you look at the exhibit, the pictures are there, Claire's data, her notes. And so because this is a prior consistent statement and counsel doesn't object, the judge can and will consider it. It's natural. Because counsel doesn't object, it comes in as regular old evidence for the judge to consider, and that does include that it bolsters the 2010 case in the 2011 case. So, yes, I would say even though, you know, the state doesn't mention it in closing and the judge doesn't in his verdict, I still think the pernicious effects of prior consistent statements and the fact that the judge says he reviews all the evidence in his verdict would include this prior consistent statement. I wanted to also note that sort of along those lines, you know, the counsel mentioned the judge's comments when he's issuing the verdict. The judge's comments don't really tell us much about what's going on in his mind when he's deciding this case. You know, it's basically a, I think the state met its burden, there's some slight inconsistencies, but I've considered the witness's demeanor, basically. There's not much else in there. So I don't think that that makes the evidence, that shows that the judge found the evidence overwhelming. It shows only that the judge felt that the state met its burden of proof. I would also like to note briefly with respect to Williams, the statement there was inconsistent with the state's theory of the case, and that's distinct from ours where it's entirely consistent with her testimony. And so Williams doesn't really help factually. But also the cross here, as I mentioned in my main argument, doesn't get into the contents of the notes at all. So cross doesn't really solve this problem. Let's see. Also in terms of Holmes, which the state mentioned, that case is also factually distinguishable because counsel there really does on cross bring out that prior consistent statement, which is distinct here. But most importantly, I think the opening statement here emphasizes to me that, you know, the rule is that mere impeachment does not allow you to bring in a prior consistent statement. That a witness who's been impeached doesn't let you bring that in unless you're alleging a motive to testify falsely or a recent fabrication. The state's not claiming that either of those things are present here. And as the proponent of the evidence, the state would bear the burden to show that. Let's see. And as Justice McClaren pointed out, with this testimony about how she keeps her diary and all that, you can point out that, yes, it's a diary, not notes, without getting into those notes' contents in any way. Excuse me, Your Honors. And then the last point with respect to the state's forfeiture argument about post-trial counsel. I argued in my opening brief that post-trial counsel was ineffective for not including this in the post-trial motion. The state did not respond to that in its brief at all. So its forfeiture argument on that point now is a little too late. But also there's no strategic reason for counsel not to have included this in the post-trial motion. Counsel noted the need to include issues to avoid appellate forfeiture. And that doesn't include this, yet does spend time arguing that counsel should have brought in the complainant's mental health records, which were, counsel did attempt to bring those in. So post-trial counsel, I think, dropped the ball here. And this Court should nonetheless review the issue despite the state's late attempts to claim forfeiture. If this Court has no further questions, because this extremely prejudicial evidence came in without counsel's objection, this Court should reverse the remand for a new trial. Thank you. Thank you. Court is adjourned.